UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID BUNTING,

    Plaintiff,

v.                                        CASE NO. 8:16-cv-2229-T-23JSS

BLACKSTONE MEDICAL SERVICES,
LLC,

    Defendant.
_____/

## **ORDER**

    Blackstone Medical Services, LLC, employed David Bunting as a "physician sleep advisor" from June 2014 until September 2015.[1] Bunting alleges that over several months Blackstone's CEO, Vick Tipnes, a practitioner of Scientology, attempted repeatedly to proselytize Bunting, who asserts that he objected to Tipnes's proselytizing and that Blackstone terminated his employment in retaliation for Bunting's objecting.

    Bunting alleges that Blackstone violated Title VII because Tipnes "severe[ly]" and "pervasive[ly]" harassed and discriminated against Bunting based solely "on the fact that [Bunting] was not a Scientologist." (Doc. 1 at 5) Also, Bunting alleges retaliation under Title VII, alleges religious harassment and discrimination under

---

[1] Blackstone's physician sleep advisors sell sleep apnea tests to the medical profession. (Doc. 20 at 6)

Florida's Civil Rights Act ("FCRA"), and alleges retaliation under Florida's Civil Rights Act. Blackstone moves (Doc. 20) for summary judgment on all counts.

## DISCUSSION

Blackstone assigned Bunting the South Hillsborough County sales area in May 2014. Nick Skijus oversaw North Hillsborough County. In February 2015 Blackstone promoted Bunting by assigning him both North and South Hillsborough County and promoted Skijus to regional sales manager. Blackstone asserts that because of Bunting's "ongoing lack of effort and poor results," office visits and sales numbers declined. (Doc. 20 at 11) Blackstone states that after several meetings and written "warnings" Skijus, who was Bunting's line manager, "remove[d]" Bunting as a physician sleep advisor in Hillsborough County. According to Blackstone, that decision, affirmed by Tipnes, "was [Skijus's], and [Skijus's] alone." (Doc. 20 at 15)

Blackstone asserts that Blackstone offered to continue paying Bunting his salary plus full commission to "help educate" and "train" Bunting's successor. (Doc. 20 at 15). But Bunting responds that Blackstone immediately "terminated" his employment on September 1, 2015; that Skijus stated he was "sorry this occurred and if it was up to [Skijus] this would not be happening"; and that at "no time during [Bunting's] employment did . . . Skijus speak with [Bunting] regarding any transition out of his role." (Doc. 36 at 9–10) Bunting denies that Blackstone offered him a training position. (Doc. 36 at 16)

- 2 -

Bunting alleges that Blackstone "removed" or "terminated" him because of his objecting to Tipnes's proselytizing for Scientology. Specifically, Bunting claims that Blackstone based mandatory training on the principles of Scientology (Doc. 36 at 3) and that Tipnes repeatedly "pestered and harassed" Bunting about Scientology (Doc. 36 at 5). Bunting states that Zach Michels and Gerald Arsenault, each a former Blackstone employee, "confirm" that Blackstone "adheres [to] and enforces the principles and beliefs of Scientology and requires Scientology-based training." (Doc. 36 at 5) Bunting alleges that Blackstone, knowing that Bunting is a Christian, attempted to "indoctrinate" Bunting into Scientology, which the plaintiff complained about on "multiple occasions." (Doc. 36 at 5–7) Finally, Bunting asserts that Blackstone "disciplined" and "ultimately terminated" him because Blackstone and "its management came to the realization that they failed in their attempts to recruit and indoctrinate." (Doc. 36 at 8)

**Religious discrimination**

Under 42 U.S.C. § 2000e-2(a)(1), an employer is prohibited from "discharg[ing]" or discriminating against an employee based on religion. A plaintiff can establish a Title VII claim by direct evidence of discrimination or circumstantial evidence that permits an inference of discrimination. *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000).

The burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies if a Title VII claim is circumstantial. *See Brooks v. Cnty.*

*Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006). The plaintiff bears the initial burden of establishing a prima facie case of religious discrimination, which is established "by presenting evidence sufficient to prove (1) that he had a bona fide religious belief that conflicted with an employment requirement; (2) that he informed his employer of his belief; and (3) that he was discharged for failing to comply with the conflicting employment requirement." *Morrissette–Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1322 (11th Cir. 2007). Also, because the FCRA is "modeled" after Title VII and because a claim brought under the FCRA is analyzed under the same framework, the outcome under the FCRA and Title VII is the same. *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010).

If the plaintiff establishes a prima facie case, the "burden of production" shifts to the defendant, who must articulate at least one legitimate, non-discriminatory reason for terminating the plaintiff, which eliminates the presumption of discrimination that attaches to the plaintiff's prima facie case. *Watkins v. Svedrup Technology, Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998). But if the defendant carries the burden, "to avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993).

A reason advanced by the defendant is not pretext for discrimination "unless [the plaintiff shows] both that the reason was false and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). A plaintiff

overcomes a defendant's asserted legitimate reason and avoids summary judgment "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999).[2]

Blackstone argues that a decline in office visits and Bunting's sales is a valid, non-discriminatory basis for removing Bunting from the Hillsborough County territory. Blackstone's proffered reason for removing Bunting from his role is supported by Blackstone's contemporaneous memoranda and graphs that depict the decline. Bunting admitted during his deposition that the graphs evidence the decline. (Doc. 20 at 15)

Blackstone tracked and graphed the sales performance of both Bunting and other physician sleep advisors. (Doc. 20 at 10) Blackstone argues that Bunting never "hit the goals that he . . . set for himself." (Doc. 20 at 10) Bunting states (1) that Blackstone's assertion that Blackstone "required" ninety visits per week is "completely false and misleading"; (2) that ninety visits "was never implemented as a requirement or a goal"; and (3) that "Skijus advised [Bunting] verbally, and in writing, that the 'sweet spot' for number of visits was in the mid-60s." (Doc. 36 at 9,

---

[2] "If a defendant rebuts with a legitimate, nondiscriminatory reason, the plaintiff can avoid summary judgment only if the evidence in its entirety (1) creates a fact issue as to whether the defendant's proffered reason is pretextual and (2) creates a reasonable inference that a prohibited motive was a determinative factor in the adverse employment decision; the plaintiff must show a genuine issue of material fact that the employer's stated reason for the discharge was pretextual and that retaliation was a determinative — not merely a motivating — factor." *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1053 (8th Cir. 2007).

12–13)  But Bunting (at his deposition) apparently agrees ("uh-huh") that he previously stated that he "would do ninety office visits per week" (Doc. 20 at 10) and agrees with Blackstone's assertion that Bunting conducted fewer than seventy office visits per week in every week except one.  (Doc. 20 at 10)  Bunting agrees with Blackstone that "a company looking at the declining numbers is entitled to take some action to correct those declines."  (Doc. 20 at 15)

Bunting's several meetings with Skijus to address performance resulted in a written performance improvement plan that Bunting signed.  (Doc. 20 at 11)  The plan details Bunting's declining office visits and sales and the repeated meetings Blackstone had with Bunting.  At one point, Blackstone told Bunting that "we need massive action now."  (Doc. 20 at 12)

Blackstone articulates a valid, nondiscriminatory reason for removing Bunting from his job.[3]  Thus Bunting bears the burden of advancing facts to show (1) that Blackstone's proffered reason is not the true reason for Bunting's removal and (2) that a discriminating reason motivated Blackstone.  *St Mary's Honor Center*, 509 U.S. at 515.  Bunting must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Blackstone's] proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

---

[3] Employers frequently successfully defend discriminatory dismissal claims by evidencing the plaintiff's inadequate work performance. *See Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721 (6th Cir. 2012); *Chambers v. Travelers Companies, Inc.*, 668 F.3d 559 (8th Cir. 2012); *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397 (7th Cir. 1992).

Blackstone argues that Tipnes promoted Bunting and that several exculpatory acts occurred between the alleged religious harassment and discrimination and Bunting's termination, including Bunting's promotion and his subsequent decline in office visits and sales. But Bunting questions the timing of his written performance plan, adopted "only after [Bunting] lodged his complaints of religious discrimination." (Doc. 36 at 8) Bunting raises several arguments in an attempt to "show weaknesses, implausibilities, inconsistencies, incoherencies and contradictions in [Blackstone's] proffered legitimate reason" for Bunting's termination (Doc. 36 at 15–16); however, each argument lacks substance. Blackstone removed Bunting from his position because Bunting's home sleep test visits and sales "were in a constant and steady decline" (Doc. 39 at 1), which Bunting himself acknowledges is a legitimate basis for termination.

Bunting offers no plausible, substantiated evidence that Blackstone's explanation for dismissal is pretext.[4] Because Bunting fails to show that a "discriminatory reason more likely motivated" Blackstone and fails to show that Blackstone's proffered explanation is "unworthy of credence," Bunting fails to establish pretext, and both his religious discrimination claims fail.

---

[4] Bunting's declaration (Doc. 36-1) consists largely of unsubstantiated allegations.

**Retaliation**

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). The burden of proof in a Title VII retaliation claim is governed by the framework established in *McDonnell Douglas*. First, a plaintiff must establish a prima facie case of retaliation by proving (1) that the plaintiff engaged in statutorily protected activity; (2) that the plaintiff suffered a materially adverse employment action; and (3) that a causal link exists between the statutorily protected activity and the materially adverse employment action. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212 (11th Cir. 2008). "After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." *Goldsmith,* 513 F.3d at 1277. To establish a causal link, a plaintiff must "establish that 'the protected activity and the adverse action were not wholly unrelated.'" *Goldsmith*, 996 F.2d at 1163.

Blackstone argues that Bunting cannot establish a causal link between any protected activity and the adverse employment action, whereas Bunting responds that he has "established satisfactory temporal proximity between his protected activity

and the adverse employment action" and has therefore "unquestionably established" his prima facie case. (Doc. 36 at 18)  But even if Bunting establishes a prima facie case, Blackstone articulates a legitimate, non-retaliatory reason for Bunting's removal as physician sleep advisor.  Bunting fails to demonstrate that Blackstone's proffered reason for removing Bunting is retaliation.  The evidence supporting Bunting's prima facie case is insufficient to create an issue of fact in light of Blackstone's documented reason for removing Bunting from Hillsborough County.  Bunting's claims for retaliation fail.

## CONCLUSION

Blackstone's motion (Doc. 20) for summary judgment is **GRANTED**.  The clerk is directed (1) to enter judgment in favor of Blackstone and against Bunting, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on February 27, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE